**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **XPEL TECHNOLOGIES CORP.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 16-CV-1308** |
| | § | |
| **CARLAS INTERNATIONAL** | § | |
| **AUTOMOBILE ACCESSORY LIMITED, and** | § | |
| **GUANGZHOU SUIZHONG AUTO** | § | |
| **ACCESSORIES CO., LTD.,** | § | |
| | § | **JURY DEMAND** |
| **Defendants.** | § | |

**PLAINTIFF XPEL TECHNOLOGIES CORP.'S
ORIGINAL COMPLAINT**

Plaintiff Xpel Technologies Corp. ("Xpel") files this Original Complaint against Carlas International Automobile Accessory Limited ("Carlas") and Guangzhou Suizhong Auto Accessories Co., Ltd. ("Suizhong") (collectively, "Defendants") and shows the following:

**NATURE OF THE ACTION**

1.      This is a lawsuit by Xpel for relief of trademark infringement, federal false designation of origin under 15 U.S.C. § 1125(a), unfair competition, dilution, and other unlawful acts of Defendants.  Defendants unlawfully, willfully, and without authorization have used and continue to use marks that are confusingly similar to Xpel's registered XPEL design trademark on Defendants' goods.  Defendants have tarnished the XPEL design mark and harmed the reputation of Xpel.

**PARTIES**

2.      Plaintiff Xpel Technologies Corp. is a Texas corporation having its principal place of business located at 618 W. Sunset Road, San Antonio, Texas 78216.

3.     Upon information and belief, Defendant Carlas International Automobile Accessory Limited is a Hong Kong limited company with its principal place of business located at East No. 3 YuanXiaDi Industrial District, JiangXiaCun, Huangshi St., Guangzhou, Guangdong Province, China and operates its business in the United States.

4.     Upon information and belief, Defendant Guangzhou Suizhong Auto Accessories Co., Ltd. is a China corporation with its principal place of business located at No. B109, Yunshangyichengchanyuan, No. 3, North 2nd Road, Jiangzia, Baiyun, Guangzhou, China and operates its business in the United States.  Upon information and belief, Guangzhou Suizhong Auto Accessories Co., Ltd. is the applicant/owner of a United States Trademark Application for the standard character mark XPPF and is involved in the marketing and sale of "XPPF" aftermarket automotive products within the United States.

## JURISDICTION AND VENUE

5.     This is a complaint for causes of action under the Lanham Act, 15 U.S.C. §§ 1114, *et seq*., Texas statutory law, and the common law of Texas.  This Court has original subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1332, 1338 and 1367.

6.     Personal jurisdiction is proper in this district because Defendants have solicited and conducted business within the State of Texas via its marketing and sales of infringing goods and acts of dilution.  Defendants' products have been inserted into the stream of commerce and directed towards Texas, amongst other places.  Defendants have marketed the infringing products on the internet in San Antonio, Texas and have sold the infringing goods in San Antonio, Texas.  Defendants' wrongful actions have damaged Xpel within the State of Texas.

7.     Venue is proper in this district under 28 U.S.C. §1391(b) and (c) because a substantial part of the events or omissions giving rise to the claims occurred here in this judicial

-2-

district.

## FACTS AND BACKGROUND

8.      Xpel is a manufacturer, distributor and retailer of after-market automotive products including, but not limited to, automotive paint protection films and headlight protection products, as well as, window film products.

9.      For the past 20 years, Xpel has become an industry leader and a worldwide leading supplier of automotive paint protection film because of its continued development of high quality and dependable automotive paint protection films and other automotive paint, headlamp, and window protection films.

10.     Much of Xpel's success is largely based on its continued commitment to high-quality dependable products and dedication to delivering tools and services that help ensure proper application of its products for the end user.

11.     Xpel works directly with independent installers and new car dealerships in the United States, which includes Xpel protection films, installation training, and access to Xpel's Design Access Program. Xpel operates five installation centers in the United States that serve wholesale and retail customers in their respective markets.

12.     Xpel has marketed and distributed its products and services under the trademark XPEL.  Xpel owns the trademark XPEL, U.S. Reg. No. 3,542,360 (depicted below in Figure 1), registered in International Class 17 on the Principal Register of the Federal Trademark Register of the United States ("Xpel's Registered Mark").



**Figure 1**

13.     Xpel's Registered Mark was registered on the Principal Register on December 9,

2008 under U.S. Reg. No. 3,542,360 and was first used in commerce at least as early as December 2007. This mark is incontestable, which pursuant to Lanham Act, 15 U.S.C. § 1115, conclusively establishes both Xpel's exclusive right to use this mark in commerce and its validity. A copy of its registration is attached hereto as Exhibit A.

14.     Xpel's Registered Mark has been registered for use with plastic film for protecting paint and glass; kits containing plastic film for protecting paint and glass.

15.     In addition to the goodwill resulting from Xpel's Registered mark, Xpel owns common law trademark rights and associated goodwill in its XPEL marks based on widespread use of those marks in the after-market automotive and parts industry ("Xpel's Common-Law Marks").

16.     Xpel's Registered Mark and Common-Law Marks (collectively, "the XPEL Marks") are composed and used in such a way that the public associates those marks with Xpel.

17.     The XPEL Marks are associated with the high quality of Xpel's products in the after-market automotive and parts industry.

18.     Xpel owns and operates its website www.xpel.com ("Xpel Website") that advertises and promotes its XPEL branded products worldwide. The XPEL Marks are displayed throughout the Xpel Website, including the use of Xpel's Registered Mark of Figure 1 above on product packaging. Examples of product packaging with Xpel's Registered Mark are shown below in Figures 2, 3 and 4.





|            |            |            |
|:----------:|:----------:|:----------:|
| **Figure 2** | **Figure 3** | **Figure 4** |

19.     Xpel's XPEL Marks are famous in Texas.

## DEFENDANTS' WILLFUL INFRINGEMENT

20.     Upon information and belief, Defendant Carlas is in the business of marketing and selling aftermarket automotive paint protection products similar to the automotive paint protection film products sold by Xpel, which products bear the trademark "XPPF" that is confusingly similar to the XPEL Marks.

21.     Upon information and belief, Defendant Suizhong is also in the business of marketing and selling aftermarket automotive paint protection products similar to the automotive paint protection film products sold by Xpel, which products bear the trademark "XPPF" that is confusingly similar to the XPEL Marks.

22.     Upon information and belief, Defendant Carlas and Defendant Suizhong (collectively "Defendants") are related entities and/or are working in concert with each other in the business of marketing and selling aftermarket automotive paint protection products, which products bear trademarks that are confusingly similar to the XPEL Marks.

4840-6600-8381.2

23.     Prior to its use of the XPPF mark, Defendant Carlas purchased paint protection film products and other after-market automotive products bearing the XPEL Marks from Xpel.

24.     On July 30, 2014, Defendant Carlas purchased from Xpel approximately $85,000.00 worth of the following Xpel products: (1) XPEL ULTIMATE Paint Protection Film; (2) XPEL XTREME Paint Protection Film; (3) XPEL ULTIMATE Custom Length PPF; and (4) XPEL Paint Protection Film Sealant.  Upon information and belief, Defendant Carlas picked up the products at Xpel's business location in San Antonio, Texas.

25.     At the beginning of November 2016, Xpel attended the SEMA Tradeshow in Las Vegas, Nevada (the "2016 SEMA Tradeshow") as an exhibitor and was located at booth number 12339 in the section labeled "Restylizing and Car Care Accessories" of the SEMA Tradeshow Exhibitor Floor Plan.

26.     Likewise, Defendants attended the 2016 SEMA Tradeshow in Las Vegas, Nevada as an exhibitor and were located at booth number 12645 in the section labeled "Restylizing and Car Care Accessories" of the SEMA Tradeshow Exhibitor Floor Plan.

27.     While at the 2016 SEMA Tradeshow, Xpel discovered that Defendants were marketing and selling aftermarket automotive paint protection products, including the automotive paint protection film similar to those products sold by Xpel, but was marketing them under the trademark "XPPF" which is confusingly similar to the XPEL Marks.  The stylized form of the XPPF mark used by Defendants is set forth below in Figures 5 and 6.

   

**Figure 5**                      **Figure 6**

28.     Depicted below in Figure 7 is a photo of Defendants booth at the 2016 SEMA Tradeshow.  As reflected in the photo of the tradeshow booth, Defendants were marketing and selling in the United States automotive paint protection films and other after-market automotive products utilizing the XPPF mark, which is confusingly similar to the XPEL Marks.



**Figure 7:  Photo of Defendant's Booth at 2016 SEMA Tradeshow**

29.     Depicted below in Figure 8 is a side-by-side comparison of Defendants booth at the 2016 SEMA Tradeshow, alongside a photo of Plaintiff Xpel's booth at the same 2016 SEMA Tradeshow.



**Figure 8: Side-by-side Photos of Tradeshow Booths**

30.     Defendants also publically displayed marketing and sales materials and products using the "XPPF" mark during the 2016 SEMA Tradeshow in Las Vegas, Nevada.    Below in

Figure 9 is a copy of tradeshow material provided to attendees by Defendants.



**Figure 9:  Defendants Tradeshow Material**

31.     As indicated in paragraph 24 above, at least as early as 2014, Defendant Carlas was a customer of Xpel and had knowledge of Xpel's use of the XPEL Marks on its after-market automotive products including, but not limited to, automotive paint protection films and headlight protection products, as well as, window film products.

32.     Following the 2016 SEMA Tradeshow, Xpel discovered Defendant Suizhong filed U.S. Trademark Application Serial No. 87/094,285 on July 6, 2016 seeking to register the standard character mark "XPPF" in International Class 17 for "plastic film coating for vehicle paint surfaces; automotive paint protective urethane film" ("Defendants TM Application").

33.     Additionally, following the 2016 SEMA Tradeshow, Xpel discovered that not only were Defendants using the XPPF mark in connection with their tradeshow booth, but also that Defendants were also using the mark in connection with the marketing and sale of

-9-

automotive paint protection film products and other products on the internet.

34.     Upon information and belief, Defendants have established a company Facebook page entitled "Carlas Wrap Vinyl Manufacturer" which is located at www.facebook.com/Carlaswrapfoil ("Carlas Wrap Manufacturer Facebook") and has posted numerous videos and photos at that website that demonstrate continued use of the "XPPF" marks, as depicted or similar to Figures 5 and 6 above, in advertising and marketing of their "XPPF" products.

35.     Likewise, Defendants have posted numerous videos and photos on their company Facebook page Carlas Car Wrap located at www.facebook.com/mandy.yang.9216 ("Carlas Car Wrap Facebook") that demonstrate continued use of the "XPPF" marks in advertising and marketing of their "XPPF" products.

36.     Additionally, Defendants have posted numerous videos and photos on their company Facebook page Carlas Wrap Vinyl Factory located at www.facebook.com/carlaswrapvinyl ("Carlas Wrap Factory Facebook") that demonstrate the continued use of the "XPPF" marks in advertising and marketing of their "XPPF" products.

37.     Moreover, Defendants own and operate the website www.carlaswrap.com ("Carlas Website") that promotes and advertises its "XPPF" products worldwide in several languages, including English.  The "XPPF" marks are each displayed throughout Carlas Website, including the use of "XPPF" mark on product packaging.  An example of products being marketed on the Carlas Website with the "XPPF" mark is shown below in Figure 10.



**Figure 10:  Carlas Website**

38.      Also, upon information and belief, Defendants own and operate another website called www.usaxppf.com ("USA XPPF Website") which advertises and promotes its "XPPF" products in the United States.   The "XPPF" marks are each displayed throughout USA XPPF Website, including the use of "XPPF" mark on product packaging, examples of which are shown below in Figures 11, 12 and 13.

**Figures 11, 12 and 13:  Defendants' Infringing Product Packaging**

  

**Figure 11**                          **Figure 12**                          **Figure 13**

39.      Defendants product packaging is similar to Xpel's product packaging.  An side-by-side illustration of the similar packing of Defendant Carlas' product and the Xpel product as

4840-6600-8381.2

set forth below in Figure 14 and 15 demonstrates how confusingly similar Defendant Carlas'

XPPF mark is to the XPEL Marks.  The similar product packaging is likely to confuse the public

that the "XPPF" products are the same or related to Xpel's products.

 

**Figure 14:  Side-by-side Images of Product Packaging**

 

**Figure 15:  Side-by-side Images of Product Packaging**

40.      Defendants continued use of the "XPPF" mark in connection with the marketing

and sale of automotive paint protection film products is confusingly similar to the XPEL Marks

and is likely to confuse the public that the "XPPF" products are the same or related to Xpel's

products.

41.      Defendants "XPPF" products are the same or similar to Xpel's products and are in

the same channels of trade as Xpel's products and target the same customers as Xpel's products.

4840-6600-8381.2

42. Defendants' use of the "XPPF" marks as shown above, or some variation thereof, are likely to give the false impression that the product is the same or related to Xpel, or are somehow affiliated with Xpel.

43. Xpel has no involvement with the "XPPF" products and has not licensed the mark to Defendants or any other entity.

44. Defendants' use of the "XPPF" mark in connection with its products is likely to impede Xpel's ability to market its "XPEL" products in the after-market automotive and parts industry.

45. Upon information and belief, Defendants intentionally used a similar mark and product packaging in order to pass off its "XPPF" products as Xpel products and to trade off the goodwill and reputation of Xpel.

46. As reflected by posts by customers on the Carlas Wrap Factory Facebook, there are instances of actual confusion as to the source of the products being sold by Carlas and/or its affiliation with Xpel.

47. Defendants had notice of the XPEL Marks no later than July 30, 2014.

48. Defendants became aware of the likelihood of confusion between its "XPPF" products and Xpel's products no later than June 21, 2016.

49. To date, Defendants are continuing to use the "XPPF" marks without regard to Xpel's trademark rights in the XPEL Marks.

## COUNT I
## FEDERAL TRADEMARK INFRINGEMENT

50. Xpel repeats and realleges each and every paragraph set forth above as if fully set forth again here.

51. Defendants' aforementioned acts constitute trademark infringement in violation of

section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

52.    Xpel's federal registration on the Principal Register for the "XPEL" trademark, U.S. Reg. No. 3,542,360, is incontestable pursuant to the Lanham Act, 15 U.S.C. § 1115. Incontestability is conclusive evidence of its validity, Xpel's ownership of the mark and of Xpel's exclusive right to use the mark in commerce in connections with the goods and services specified in the certifications of registration under 15 U.S.C. § 1115(b).

53.    Defendants are intentionally and wrongfully using in commerce unauthorized reproductions, counterfeits, copies, and colorable imitations of Xpel's Registered Mark in connection with the sale, offering for sale, distribution, and advertising of Defendants' after-market automotive products, with full knowledge that such marks and designations are counterfeit marks.  Such uses are likely to cause confusion, or to cause mistake, or to deceive, including, without limitation, by being likely to cause confusion as to sponsorship or authorization by Xpel, or alternatively, by destroying the origin-identifying function of Xpel's Marks.  Defendants' actions constitute trademark infringement in violation of section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

54.    Defendants became aware of Xpel's ownership of the XPEL Marks no later than July 30, 2014.

55.    Defendants became aware of the likelihood of confusion caused by its use of the "XPPF" mark in relation to its products no later than June 21, 2016.

56.    Defendants have made extensive use of the mark "XPPF" in the promotion and sale of their products.

57.    The foregoing acts of infringement have been and continue to be deliberate, willful, and wanton, making this an exceptional case within the meaning of 15 U.S.C. § 1117.

-14-

58.     Defendants' sales and marketing of the "XPPF" aftermarket automotive protective films will likely continue unless enjoined by this Court.

59.     As a proximate result of Defendants' actions, Xpel has suffered and will continue to suffer substantial damage to its business, goodwill, reputation, profits, and the strength of its trademarks.  The injury to Xpel is ongoing and irreparable.

60.     An award of monetary damages alone cannot fully compensate Xpel for its injuries, and Xpel lacks an adequate remedy at law.

61.     Xpel is entitled to a permanent injunction against Defendants, as well as other remedies available under the Lanham Act, including but not limited to, damages sustained by the Plaintiff, treble damages, disgorgement of the Defendants' profits, and costs and attorneys' fees.

**COUNT II**
**FEDERAL UNFAIR COMPETITION, FALSE DESIGNATION OF ORIGIN,**
**<u>PASSING OFF AND FALSE ADVERTISING UNDER THE LANHAM ACT</u>**

62.     Xpel repeats and realleges each and every paragraph set forth above as if fully set forth again here.

63.     The XPEL Marks are used by Xpel in connection with providing high quality goods and services and are distinctive marks that have become associated with Xpel and thus exclusively identify Xpel's business, products, and services.

64.     Defendants are intentionally and wrongfully using unauthorized reproductions, counterfeits, copies, and colorable imitations of the XPEL Marks in commerce on and in connection with Defendants' same or similar aftermarket automotive products, resulting in false designations of origin, false and misleading descriptions of fact, and false and misleading representations of fact that are likely to cause confusion, to cause mistake, and to deceive as to the affiliation, connection, and association of Defendants with Xpel and as to the origin, sponsorship, or approval of Defendants' same or similar aftermarket automotive products and

commercial activities by Xpel, and that misrepresents the nature, characteristics, and qualities of Defendants' "XPPF" aftermarket automobile products and commercial activities, in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  For example, consumers are deceptively led to believe that the "XPPF" aftermarket automotive products are the same as Xpel products or are sponsored by or otherwise approved by Xpel.

65.     The foregoing acts and conduct by Defendants constitute false designation of origin, false advertising, passing off, and unfair competition in connection with products and services distributed in interstate commerce, in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

66.     Defendants' acts, as set forth above, have caused irreparable injury to Xpel's goodwill and reputation.  The injury to Xpel is ongoing and irreparable.

67.     Defendants' sales and marketing of the "XPPF" aftermarket automotive products will likely continue unless enjoined by this Court.

68.     Xpel is entitled to a permanent injunction against Defendants, as well as all other remedies available under the Lanham Act, including, but not limited to, compensatory damages, treble damages, disgorgement of profits, and costs and attorney's fees.

69.     An award of monetary damages alone cannot fully compensate Xpel for its injuries and Xpel lacks an adequate remedy at law.

## COUNT III
## DILUTION UNDER TEXAS BUSINESS & COMMERCE CODE § 16.103

70.     Xpel repeats and realleges each and every paragraph set forth above as if fully set forth again here.

71.     The XPEL Marks are famous and protectable marks in Texas and, on information and belief, Plaintiff's protected interest in those marks arose before Defendants' use of those marks.

72.     Xpel has no control over the qualities, or lack thereof, of Defendants' "XPPF" products, its advertising and other promotional materials related thereto, or its unauthorized use of the XPEL Marks.  As a result of such use by Defendants, the business reputation of Xpel, as well as the XPEL Marks, are being tarnished, and such tarnishing will continue unless stopped by this Court.

73.     Defendants' sale and marketing of "XPPF" products and its use of and dissemination of materials bearing marks confusingly similar to the XPEL Marks are and will continue to result in the dilution of the distinctive nature of the XPEL Marks through blurring.

74.     Defendant's wrongful conduct constitutes an extreme threat to the distinctiveness of the XPEL Marks that Xpel has expended great efforts to develop and maintain through its strict control over the usage of the XPEL Marks.

75.     The XPEL Marks are distinctive and of high value and they and the business reputation of Xpel with which they are associated have suffered and will continue to suffer irreparable harm by such blurring and tarnishing if Defendants' wrongful conduct is allowed to continue.

76.     Defendants' acts, as set forth above, have caused irreparable injury to the distinctive quality of the XPEL Marks as well as Xpel's business reputation.  This injury is ongoing and irreparable.

4840-6600-8381.2

77.     Defendant's sales and marketing of the "XPPF" products will likely continue unless enjoined by this Court.

78.     Xpel is entitled to a permanent injunction against Defendant consistent with Section 16.103 of the Texas Business and Commerce Code.

**COUNT IV**
**UNFAIR COMPETITION UNDER TEXAS COMMON LAW**

79.     Xpel repeats and realleges each and every paragraph set forth above as if fully set forth again here.

80.     Defendants have committed trademark infringement and other unlawful acts as set forth above in violation of Plaintiff's property rights in the XPEL Marks.  Such acts constitute unfair competition under the common law of the State of Texas entitling Plaintiff to relief.

81.     Due to Defendants' conduct, Plaintiff has suffered irreparable harm, suffered injury-in-fact, and have lost money or property as a result of Defendants' acts of unfair business practices alleged herein.  It would be difficult to ascertain the amount of money damages that would afford plaintiff adequate relief at law for Defendants' acts.  Plaintiff's remedy at law is not adequate to compensate it for its injuries.   Accordingly, Xpel is entitled to a permanent injunction against Defendants, as well as all other remedies, including, but not limited to, compensatory damages, treble damages, disgorgement of profits, and costs and attorney's fees

82.     On information and belief, Defendants' conduct has been intentional and willful and in conscious disregard to Plaintiff's rights and, therefore, Plaintiff is entitled to their attorneys' fees.

83.     Xpel's injury resulted from Defendants' malice, which entitles Xpel to exemplary damages under Texas Civil Practice & Remedies Code section 41.003(a)(2).

4840-6600-8381.2

## COUNT V
## PASSING OFF UNDER TEXAS COMMON LAW

84.     Xpel repeats and alleges each and every paragraph set forth above as if fully set forth again here.

85.     Xpel's legitimate products under the trademarked name "XPEL" were created through or a product of Xpel's extensive investment of time, labor, skill, and money.  The XPEL Marks have acquired secondary meaning.

86.     Defendants have used and are continuing to use a mark that is confusingly similar mark to the XPEL Marks in the sale, offering for sale, distribution, and advertising of Defendants' "XPPF" products in direct competition with Xpel.

87.     Defendants use of a mark that is confusingly similar mark to the XPEL Marks and use of similar product packaging on the same type of after-market automotive paint protection film products is likely to cause confusion.

88.     Defendants' acts are intentional.  Defendants are former customers of Xpel and are familiar with the Xpel products and the XPEL Marks.  Defendants' "XPPF" branded products are the same or substantially similar as Xpel products, including the "XPPF" product packaging.

89.     Such acts of passing off caused commercial damage to Xpel through lost profits and lost goodwill for which Xpel is entitled to recover any and all remedies provided by Texas common law.

## REQUEST FOR A JURY TRIAL

90.     Xpel requests a jury trial on all issues in this action so triable.

4840-6600-8381.2

## <u>PRAYER FOR RELIEF</u>

Plaintiff respectfully request this Court to enter judgment in favor against Defendants

granting the following relief:

A.  That Defendants and those persons and entities in concert or participation with Defendants, and their respective affiliates, successors, and assigns along with the directors, officers, agents, servants, and employees thereof be permanently enjoined from:

1.  Using any of the XPEL Marks or any mark that is confusingly similar to of the XPEL Marks in conjunction with the promotion, marketing, and advertising of any aftermarket automotive product;
2.  Diluting, tarnishing, blurring, and infringing the Xpel Marks and from injuring Xpel's goodwill and reputation;
3.  Passing off or falsely designating the origin of Defendants' products as those of Plaintiffs;
4.  Doing any other act likely to induce the belief that Defendants' products are in any way connected with, sponsored , affiliated, licensed, or endorsed by Xpel; and
5.  Using any of the XPEL Marks for goods and services, or on the internet or as domain names, email addresses, meta tags, invisible data or otherwise engaging in acts or conduct that would cause confusion as to the source, sponsorship or affiliation of Defendants with Xpel.

B.  That Defendants in accordance with 15 U.S.C. § 1116(a), be directed to file with this court and serve upon Xpel within thirty days after service of the permanent injunction a report in writing under oath, setting forth in detail the manner and form in which Defendants have complied with the permanent injunction;

C.  That Defendants be ordered to deliver an accounting to Plaintiff within thirty days of the entry of judgment;

D.  That Defendants be ordered to deliver up for destruction all labels, signs, prints, packages, wrappers, receptacles, and advertisements in their possession that bear any of the XPEL Marks or any reproduction, counterfeit, copy, or colorful imitation thereof, and all plates, molds, matrices, and other means of making the same;

E.  That Defendants be ordered to take down the www.usaxppf.com and www.carlaswrap.com websites and the identified Facebook pages unless and until all use of any mark that is confusingly similar to the XPEL Marks is removed;

F.  That Defendants acts constitute trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1);

G.  That Defendants have violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a);

-20-

H.      That Defendants diluted the XPEL Marks in violation of Section 16.103 of Texas Business & Commerce Code;

I.      That Defendants passed off goods using marks that are confusingly similar to the XPEL Marks in violation of Texas common law.

J.      That Defendants acts constitute unfair competition in violation of Texas common law;

K.      That Xpel recover its actual damages sustained as a result of Defendants' wrongful actions or, if so elected by Plaintiff, statutory damages under 15 U.S.C. § 1117(d);

L.      That Defendants shall disgorge to Xpel its profits made as a result of Defendants' wrongful actions;

M.      That Xpel recover three times Defendants' profits made as a result of Defendants' wrongful actions or three times Xpel's damages, whichever is greater;

N.      That this case be deemed an exceptional case under 15 U.S.C. §§ 1117(a) and (b) and that Defendants be deemed liable for and ordered to reimburse Xpel for its reasonable attorneys' fees;

O.      That Xpel be awarded exemplary damages for Defendants' willful and intentional acts;

P.      That Xpel recover its costs in this action;

Q.      That Xpel recover all prejudgment and post judgment interest as allowed by law; and

R.      That Xpel recover such further relief as may be just and proper.


Dated: December 28, 2016                    Respectfully submitted,


                                            /s/ J. Daniel Harkins
                                            J. Daniel Harkins (Texas Bar No. 09008990)
                                            Sherri Wilson (Texas Bar No. 24075291)
                                            DYKEMA GOSSETT PLLC
                                            112 E. Pecan Street, Suite 1800
                                            San Antonio, Texas  78205
                                            Tel:        (210) 554-5500
                                            Fax:        (210) 226-8395
                                            Email:      dharkins@dykema.com
                                                        swilson@dykema.com


                                            ATTORNEYS FOR PLAINTIFF
                                            XPEL TECHNOLOGIES CORP.

4840-6600-8381.2